# SUPREME COURT OF THE UNITED STATES

---

No. 24A790

---

SCOTT BESSENT, SECRETARY OF THE TREASURY,
ET AL. *v.* HAMPTON DELLINGER, SPECIAL COUNSEL
OF THE OFFICE OF SPECIAL COUNSEL

ON APPLICATION TO VACATE THE ORDER ISSUED BY
THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

[February 21, 2025]

This matter concerns the President's action to remove Hampton Dellinger from his position as Special Counsel for the Office of Special Counsel. Dellinger challenged his without-cause removal in the District Court for the District of Columbia. See 5 U. S. C. §1211(b). On February 12, 2025, the District Court entered a temporary restraining order (TRO) providing that Dellinger should remain in office until the court ruled on his motion for a preliminary injunction. The District Court has scheduled a hearing on that motion for February 26, the day that the TRO expires. See Fed. Rule Civ. Proc. 65(b)(2).

Pending before this Court is the Government's application to vacate the TRO. Dellinger has filed a Response in Opposition. The Government then filed a reply. The question is thus fully briefed before this Court.

Although it acknowledges that this Court typically does not have appellate jurisdiction over TROs, the Government urges us to construe the TRO as a preliminary injunction or to exercise jurisdiction under the All Writs Act in light of the core executive power assertedly restrained. Application 31–32; see 28 U. S. C. §1292(a)(1). In his opposition, Dellinger repeatedly notes that the TRO will "expire by its terms [in] eight [now five] days," Response in Opposition 1,

that it "lasts only for a very short duration," *id.*, at 15, and that it "is set to expire on February 26," *id.*, at 39.

In light of the foregoing, the application to vacate the order of the United States District Court for the District of Columbia presented to THE CHIEF JUSTICE and by him referred to the Court is held in abeyance until February 26, when the TRO is set to expire.

JUSTICE SOTOMAYOR and JUSTICE JACKSON would deny the application.

JUSTICE GORSUCH, with whom JUSTICE ALITO joins, dissenting from the order holding the application in abeyance.

Until recently, Hampton Dellinger served as Special Counsel, the head of the Office of Special Counsel. 5 U. S. C. §1211(a). That agency oversees the enforcement of various statutes governing the federal workforce. §1212(a). The Special Counsel is appointed by the President, with the advice and consent of the Senate, for a five-year term. §1211(b).

On February 7, 2025, the President removed Mr. Dellinger from office. Complaint in No. 25–cv–385 (D DC, Feb. 10, 2025), ECF Doc. 1–1, Exh. A. Mr. Dellinger responded by suing the President and other officials on February 10, claiming that §1211(b) restricted the President's authority to remove him. ECF Doc. 1, at 1.

Mr. Dellinger also sought interim equitable relief restoring him to his post while his lawsuit unfolds. Granting that request, the district court issued a temporary restraining order (TRO) directing that Mr. Dellinger "shall continue to serve as the Special Counsel" until the court rules on his application for a preliminary injunction. ___ F. Supp. ___, ___, 2025 WL 471022, *14 (D DC, Feb. 12, 2025). Over Judge Katsas's dissent, a panel of the D. C. Circuit held it lacked jurisdiction to review the TRO at that time. App. to Application to Vacate Order 33a (App.). The President and other defendants promptly filed an application in this

Court, asking us to vacate the district court's order.

The Court instead holds the application in abeyance. Presumably, like the court of appeals, it harbors a concern that the TRO may not yet have ripened into an appealable order. Respectfully, I believe that it has and that each additional day where the order stands only serves to confirm the point. Unlike preliminary injunctions, of course, TROs are generally not appealable. See *id.*, at 1a (citing 28 U. S. C. §1292(a)(1)). But exceptions exist, preventing district courts from "shield[ing]" their "orders from appellate review." *Sampson* v. *Murray*, 415 U. S. 61, 87 (1974). And as Judge Katsas recounted in detail below, here there are powerful reasons to look behind the label, acknowledge that this TRO presently acts as a preliminary injunction, and review its lawfulness. App. 50a–53a; see *Sampson*, 415 U. S., at 87; 16 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure §3922.1 (3d ed. 2012).

As a starting point in that review, consider what we know about the remedy the district court ordered. The court effectively commanded the President and other Executive Branch officials to recognize and work with someone whom the President sought to remove from office. Whether labeled a TRO or a preliminary injunction, that order provided an equitable remedy. See, *e.g.*, Advisory Committee's 1937 Note on Fed. Rule Civ. Proc. 65, 28 U. S. C., p. 2648; Fed. Equity Rule 73 (1912).

Under this Court's precedents, however, a federal court may issue an equitable remedy only if, at the time of the Nation's founding, it was a remedy "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo, S. A.* v. *Alliance Bond Fund, Inc.*, 527 U. S. 308, 319 (1999). That limitation would seem to pose a problem here, for courts of equity at the time of the founding were apparently powerless to "restrain an executive officer from making a . . . removal of a subordinate appointee." *White* v. *Berry*, 171 U. S. 366, 377 (1898) (internal quotation marks omitted).

"No English case" involved "a bill for an injunction to restrain the appointment or removal of a municipal officer." *In re Sawyer*, 124 U. S. 200, 212 (1888). And state courts "denied" the "power of a court of equity to restrain . . . removal" in "many well considered" decisions. *Ibid.* Given that pattern of restraint, by the 1880s this Court considered it "well settled that a court of equity has no jurisdiction over the appointment and removal of public officers." *Ibid.*

To be sure, throughout the Nation's history, various presidentially appointed officials like Mr. Dellinger have contested their removal—and courts have heard and passed on their claims. But those officials have generally sought remedies like backpay, not injunctive relief like reinstatement. *E.g.*, *Myers* v. *United States*, 272 U. S. 52 (1926); *Humphrey's Executor* v. *United States*, 295 U. S. 602 (1935). The closest the parties have come to identifying a precedent for the district court's remedial order in this case is "just a single, unpublished district-court decision purporting to enjoin the President from removing [two] government official[s] from office." App. 55a (Katsas, J., dissenting) (citing *Berry* v. *Reagan*, No. 83–3182 (D DC, Nov. 14, 1983)). And that case involved members of "a temporary, multi-member agency," App. 55a, not an official, like Mr. Dellinger, who wields significant prosecutorial and investigative power as the sole head of a 129-person office, Application to Vacate Order 6–8.

In response to all this, Mr. Dellinger stresses that courts of law have traditionally entertained petitions for writs of *quo warranto* to decide "which of two claimants [is] entitled to an office." Brief in Opposition 32 (quoting *Newman* v. *United States ex rel. Frizzell*, 238 U. S. 537, 544 (1915)). But it is unclear how Mr. Dellinger might defend the district court's exercise of its *equitable* remedial authority by pointing to a distinct *legal* remedy he never sought, the district court never invoked, and the procedures for which he did not follow. See D. C. Code §16–3501 *et seq.* (2024);

*Johnson* v. *Manhattan R. Co.*, 289 U. S. 479, 502 (1933); *Andrade* v. *Lauer*, 729 F. 2d 1475, 1498 (CADC 1984). If anything, the (potential) availability of *quo warranto* would seem to cut against recognizing a novel equitable power to return an agency head to his office, for a "court of equity will not entertain a case for relief where the complainant has an adequate legal remedy." *Case* v. *Beauregard*, 101 U. S. 688, 690 (1880).

The district court grappled with none of these complications before ordering Mr. Dellinger's reinstatement. And if there are answers to the questions its remedial order raises, they appear nowhere in that court's decision. Accordingly, I would vacate the district court's order and remand with instructions to consider the "boundaries of traditional equitable relief." *Grupo Mexicano*, 527 U. S., at 322.*

––––––––––

*Given the questions associated with the district court's remedy, I do not address at this time the President's contention, Application to Vacate Order 11–12, and Judge Katsas's assessment, App. 54a–57a, that the district court's order also relies on a mistaken view of the merits of Mr. Dellinger's removal claim.